# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| JAMES BAILEY § | |
| § | |
| V. § | CASE NO. 4:09-CV-00260-RAS-DDB |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits ("DIB"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **AFFIRMED.**

## HISTORY OF THE CASE

Plaintiff protectively filed an application for Disability Insurance Benefits under Title II, and Supplemental Security Income disability benefits under Title XVI of the Social Security Act on August 16, 2006, claiming entitlement to disability benefits due to a large bleeding hemorrhoid, panic attacks, obesity, Hepatitis C, neck problems, back problems, general arthralgia, a wrist problem, depression, anxiety, rheumatoid arthritis, and testicular swelling. Plaintiff's application was denied initially on November 7, 2006, and on reconsideration on January 29, 2007. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) in Dallas, Texas on October 21, 2008. Plaintiff was represented by counsel at the proceeding. Also appearing and testifying were Alvin Smith, Ph.D., and John Billinghurst, M.D., impartial medical experts, and

1

Russell B. Bowden, an impartial vocational expert.

On November 26, 2008, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff requested Appeals Council review, and on March 30, 2009, the Appeals Council issued an Order affirming the October 21, 2008 decision. Therefore, the October 21, 2008 decision of the ALJ became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings**:**

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et. seq.*).

3. The claimant has the following severe impairments: obesity, hepatitis C, neck problems, back problems, general arthralgia, a wrist problem, depression, anxiety, rheumatoid arthritis and testicular swelling (20 C.F.R. § 404.1521 *et. seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 10 pounds maximum, stand/walk 2 hours of an 8 hour workday, sit 6 hours of an 8 hour workday, change positions for 2-3 minutes to stretch at 30-45 minute intervals, no ropes, ladders, scaffolds, balancing, crawling or climbing, remainder of posturals occasionally, no overhead lifting, no constant repetitive use of the upper extremities, no heights, no work with or in close proximity to hazardous machinery, no complex instructions and only incidental public contact. The residual functional capacity is based on the evidence of record and testimony at the hearing.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on March 25, 1963, and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2005, through the date of this decision (20 C.F.R. §§ 404.152(g) and 416.920(g)).

(Tr. 13-18).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the

evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520© (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P,

Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987).

At the fifth step, it must be determined whether claimant could perform some work in the national economy. A claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

In this case, a determination was made at the **fifth** step.

## ANALYSIS

Plaintiff raises two issues: (1) whether the Administrative Law Judge (ALJ) erred in not adopting his second hypothetical question to the vocational expert, which included the need to take unscheduled rest breaks for up to a half an hour; and (2) whether the ALJ erred in not considering the special accommodation that Plaintiff alleges he would need to in order to work around other people.

Because the ALJ determined that Plaintiff could not return to his past relevant work, the ALJ proceeded to step five in the sequential evaluation process, where the burden shifts to the Commissioner to show that other work exists that Plaintiff is able to perform. *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). The Commissioner may meet this burden by relying on the medical-vocational guidelines, or "grids," contained in Appendix 2 of the Social Security regulations, or by obtaining the testimony of a vocational expert that there is work available which Plaintiff may perform. *See id.* at 1304; 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ relied on vocational expert testimony to demonstrate the existence of a significant number of other jobs in the national economy that he could perform (Tr. 17-18 [Finding 10]).

The ALJ posed a hypothetical question to the vocational expert including Plaintiff's age (42 years-old on his alleged onset date), education (high school education), past relevant work experience, and residual functional capacity (Tr. 79-80 [Findings 8-11]). The vocational expert testified that such a hypothetical individual could perform the unskilled, sedentary jobs of lens inspector, film inspector, and button inspector, existing in significant numbers in the national economy (Tr. 80-81).

Plaintiff argues that the vocational expert's testimony resulting from a second hypothetical question that the ALJ posed precludes him from work. *See* Pl.'s Br. at 3-4. In the second question, the ALJ added that the hypothetical individual would be required to take unscheduled and/or pain breaks of up to half an hour, and the vocational expert accordingly testified that his added limitation would preclude competitive employment (Tr. 81). However, the ALJ was not bound by the vocational expert's responses to questions based on assumptions he subsequently found the record

did not support. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

According to the record, Dr. Smith testified that Plaintiff had self reported five to six panic attacks in March 2008, 15 panic attacks in April 2008, and three panic attacks in June 2008 (Tr. 76, 425-426). Plaintiff reported that his panic attacks lasted 15 minutes (Tr. 76, 425-426). Dr. Smith considered Plaintiff's reports of panic attacks and determined that Plaintiff would not be able to deal with crowds or the general public on an ongoing basis and that he would only be able to handle brief incidental contact with the public (Tr. 77). According to the record, Dr. Smith opined that the disruptive impact of Plaintiff's anxiety would also interfere with the completion of complex activities on an ongoing basis; thus, Plaintiff was limited to detailed types of tasks at best (Tr. 77). The ALJ accepted Dr. Smith's opinion as fully consistent with the evidence of record and limited Plaintiff to no complex instructions and only incidental public contact (Tr.14-15, 16). Thus, the ALJ took the effect of Plaintiff's panic attacks into consideration in formulating his residual functional capacity assessment, and the record and Dr. Smith's testimony support a finding that these limitations would allow Plaintiff to perform work.

Because the hypothetical question that the ALJ articulated reasonably incorporated the limitations and impairments that he recognized, and because Plaintiff received the opportunity for cross-examination, the ALJ properly relied upon that testimony to deny Plaintiff's claim for disability benefits under the Act (Tr. 79-81). *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.

1986)). It is within the ALJ's discretion to determine the nature of claimant's disability, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Therefore, the ALJ did not err in excluding the vocational expert's testimony, since, based on the evidence, the ALJ did not determine (and the record does not support a finding) that Plaintiff was required to take unscheduled breaks of up to a half hour.

Plaintiff argues that because he has Hepatitis C and bleeding from hemorrhoids, it is medically necessary for him to have a separate restroom and that this could not be accommodated in the workplace. *See* Pl.'s Br. at 4. Plaintiff points to testimony from the vocational expert and medical expert in support of his argument; however, their testimony does not support Plaintiff's argument.

Dr. Billinghurst, a medical expert, testified that he did not see anything in the record supporting Plaintiff's allegation that his hemorrhoid condition would create a dangerous condition to others in the workplace (Tr. 84). The ALJ agreed with Dr. Billinghurst's opinion in general and found Dr. Billinghurst's opinion to be fully supported by the evidence of record (Tr. 16). Although Plaintiff testified that his hemorrhoids caused him to bleed three or four times a week, the medical evidence does not show that Plaintiff's bleeding from his hemorrhoids was so significant that it would create a dangerous work condition or require a separate restroom (Tr. 58).

The ALJ did not find that Plaintiff's hemorrhoids were a severe impairment, and the record supports this determination (Tr. 13). Plaintiff testified that he first started having hemorrhoids in the early 1990s, and they got worse while he was in prison (Tr. 57-58). However, in September 2006, a medical profile from MHMR facility showed that Plaintiff did not have any history of hemorrhoids

(Tr. 300). And, in an October 2006 consultative internal medicine examination with Dr. Narenda A. Patel, Plaintiff did not mention his hemorrhoids at all (Tr. 241-244).

In December 2006, Dr. James A. Haley noted that Plaintiff had "a history of intermittent episode[s] of bright red blood per rectum, over the last year, increased in severity over the last several weeks" (Tr. 282). Dr. Haley performed a colonoscopy examination and an esophagogastrodudenoscopy examination, which showed internal and external hemorrhoids, and he recommended that Plaintiff eat a high-fiber diet and use AnaMantle Cream after each bowel movement and at bedtime (Tr. 284, 325-327). Dr. Haley did not advise Plaintiff that his bleeding created a dangerous condition or that he should not use a public restroom (Tr. 282-284). In February 2007, Dr. Haley noted that after following the recommended perianal care, Plaintiff had only the "rare episode of rectal bleeding" (Tr. 321). According to the record, Dr. Haley recommended that Plaintiff continue perianal care (Tr. 321). Plaintiff did not complain of hemorrhoids during February and April 2007 examinations with Dr. Victor L. Cobos and rectal examinations showed that he had normal sphincter tone, no masses, and no fiatulas or ulcers (Tr. 363-365, 371-373).

Dr. Deno B. Barroga treated Plaintiff from January 2008 to December 2008 (Tr. 424-440, 448, 466-473, 476, 484-489). During the entire period of time that Dr. Barroga treated Plaintiff, he did not note that Plaintiff experienced any problems with hemorrhoids; he did not diagnose Plaintiff with hemorrhoids; and, in an October 2008 description of Plaintiff's limitations, he did not limit Plaintiff due to hemorrhoids (Tr. 424-440, 448, 466-473). The medical evidence does not support Plaintiff's allegation that his hemorrhoid condition was so severe that it would create a dangerous condition to others in the workplace requiring a separate restroom (Tr. 84).

## RECOMMENDATION

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).

**SIGNED this 17th day of December, 2010.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE